Yes, Your Honors, my name is Jim Smith. I'm both the Chapter 7 Bankruptcy Trustee, and in each of these cases I was appointed as the, my appointment was approved to render legal services to the estate as attorney for the bankruptcy estate. I'll talk a little about, I know Your Honors have read the briefs and I've really, I've tried to go in detail there, but there's a common thread between all of these cases, and that is an objection to the trustee of being the attorney for the estate, and the other common thread is that the continuing argument that the services provided were services that the trustee, not an attorney, should provide to the estate. And as a result of that, the judge disallowed in all of these cases most of the fees. Another important thing that I want to point out, two of these cases are objection to trustee's fees, and on the objection to trustee's fees, I'll comment a little about each case. Well, can I interrupt you for one quick second? I'm sorry, this is Judge Lafferty. You won that one, right? I mean, Judge Gann agreed that it would not be appropriate to reduce or limit your trustee fees per se, correct? Correct. So that's not on appeal. If you want to, if you think it's helpful context, sure, but that one you won, I think, didn't you? Well, but there was never an objection to the attorney's fees. That was the point. Okay. The point was, trustee's fees should be disallowed because the court allowed attorney's fees, and the argument of the U.S. trustee was, quote, double dipping. In other words, you're being paid twice for the same thing. Well, again, sorry to interrupt you, but in any, just so we're starting from the same place, in any event, the court has an independent duty to review fee applications and has the power, whether somebody objects or not, to reduce them where it believes appropriate, right? No, no question about this. Okay. Well, just a comment to your honor is, is that the fees were already allowed. The fees had already allowed, the orders were final. It wasn't, was, the fees were allowed in some instances years before. And so you're, you are correct that the, in the argument that I should not be compensated as a trustee's commission, but to grant a remedy to that, simply went back in the docket and said, well, you, you, the reverse of it. You shouldn't have been paid the attorney's fees, or the attorney's fees should not have been allowed. Well, can I, I'm sorry to be doing all the commenting here, but, you know, what's awkward about this, and we're certainly going to see this, is in some ways, this is a lot harder in a small case. In, in, in a mid-sized to big case, the, you know, the attorneys come in, they do things episodically the way we see them do it. Judge gets a pretty good idea what's going on and has kind of a running concept of the case. In a smaller case, it's just harder because we don't see you as often. What you do is maybe under the radar in a sense that it And that strikes me as a challenge for both sides here. That you believe that you're being unfairly second-guessed, and the trustee, U.S. trustee comes in and says, well, you do have to look at this as of the perspective of the end of the case. So I think that's a bit of a, if you want to comment on that, and just from a policy basis, what you think we ought to do about it, I think we'd love to hear it. A response to that question is this, and I've thought about that issue. Yeah. And I put in my reply brief. If in any or all of these cases, the court just simply says that the fees are too much for the size of the estate and that they should be reduced, I asked the court just to do that. But that's not what happened here. The court repeatedly ruled that this was the trustee's duty and that these attorney services were not compensable, including, I'll talk first about Earl's Wine Shop, a small wine shop here in Yuma, Arizona. And when the case was filed and when I got the case, it was closed up. The landlord had changed the locks. The utility company had changed the locks. And when I determined that and was first assigned the case and appointed as attorney, I undertook to resolve those issues with the landlord, the issues being the amount of administrative rent claim, whether or not I had the authority to avoid the And your honor is correct. In these smaller cases, if this was a million dollar case, it wouldn't make any difference. Just pay the rent and whatever. But there was no money in this in this case. The court disallowed the service of attorney services for a resolution of it. It took almost a year to resolve the issue with the landlord. And I can I jump in there for a second because I'm agreeing with you But, you know, from your perspective, what I think you're saying is the judge had it in mind the whole time to disallow the fees because they shouldn't have been performed by an attorney. What I think we might have read in the record was Judge Gann asking again and again and again, parties tell me, give me the arguments. We have a standard that if if a task can be performed by a trustee, it should be in the statute says that. And in my reading of the record and the lengthy hearing processions, it was Judge Gann asking over and over and over again. Both sides help me out here. Tell me how you apply these things. What's the answer? So even though he might have looked at it initially and said, well, the statute warns me about this. I have to be worried about it. I think he gave both sides chance after chance after chance to make whatever arguments they wanted to make about how it works. And is that an unfair characterization in your mind? I don't think. No, I don't. These are relatively small fee applications. I was put through three or four court hearings, briefings and everything else just to try to convince the judge and show the judge more importantly, on most of these cases involved in adversary proceedings. And in those cases, the judge disallowed the fees for filing adversary proceedings saying that was the trustee's job or or it was unnecessary or something to that extent. But I would agree with Judge Gann on that. And, uh, you know, U.S. trustee repeatedly as has in these cases and in other cases has repeatedly argued that Ninth Circuit case strand where where the attorney were due denied because there was no recovery in the location and the fees were to be paid from assets that were not ever really even recovered by the attorney. That's not the case in these every one of these cases, every dollar for which I request compensation for the specific issue. And that's not the case in this case. The money was in the estate. There was no other. This is not a case as it was portrayed that the trustee was The most glaring thing I would like this court to and to consider is the complete argument by Judge Gann that the compensation for prosecution of adversary proceedings and in the most glaring example of that in Earl's Food Mart case, I filed a lawsuit against the self storage company who had violated the automatic property after I told him it was a state property. The judge said, Well, I don't think that was necessary. And I later settled it for $4,000 reason that the judge denied the fees in the that adversary proceeding with a judge concluded that maybe first the judge said that they weren't going to allow any fees because I settled the case. Can I ask you a clarification question? When we're talking about Judge Gann, I think you use the word finding in one instance and concluding in the other. When he's making a ruling that services were actual or necessary, as in the lawyer had to do it, not the trustee. Is that a factual finding in your mind? Because if it is, we had to find he was clearly erroneous, right? Well, I think it's a conclusion. It's not a fact that there was never there was never a disagreement as to whether or not the services were rendered, he concluded, the judge concluded that they were trustee services, or that they were services not legal conclusion, not a factual matter. Right? It was never disputed about the services being rendered that was not disputed. You know, so a couple of things since I'm running out of things that I would like to have court to address and consider is that on the trustee, the objection ones, the court went in that the attorney's fees had long since or had previously been allowed. And while can I stop you just for a second and go back, he said, it's a conclusion of law because the services were rendered. But isn't it a question of fact for the judge to decide that even if the services were rendered, were those services that should be rendered by a trustee in their duties as a trustee? As opposed to an attorney for the trustee strikes me that that's still a factual question. Well, I presume maybe that could be completed that way. I've thought a factual dispute as to whether or not the services were rendered what slot they fit in, I suppose, would be a conclusion that that court would have to make after listening to the evidence and considering what happened in the case. But in any event, since I'm quickly running out of time, I wonder that the use of Rule 60 be to set aside attorney's fees orders when there was no motion, the US trustee never made a motion under Rule 60 be that the judge was considering whether or not to award or to deny the trustees fees. The judge came up with the conclusion. Well, under Rule 60 be the attorney's fees or should be the trustee fees should be allowed. But I'm going to go ahead and just use 60 be and set aside the previous orders without a motion being made without the opportunity to argue if the order is set aside without the opportunity even to argue about the merits of the motion that was resolved by the order that the judge set aside. I just come out of the clear blue sky. And they're the important point that I want to make to the court that US trustee never ever have made a motion under Rule 60 be set aside the attorney's fees, but that's what was done. So with that, I'll I've got two minutes and 20 seconds, I may want to use that after the other side. Okay, thank you. Thank you for listening. Very good. Thank you. Thank you. All right, Miss Cox. Make this court. I'm Wendy Cox. I represent the United States trustee. So I think I'll start where Mr. Smith left off with the with the reconsideration issue. So while while it's true that the United States trustee didn't specifically move for reconsideration under Rule 60 be of the attorneys, by the way, there's no 706 rule. So excuse me, 60. Yeah, nevermind. Okay. Also, also didn't object to the fee application at the first go around. Correct. That's correct. And those in those two cases in Bangor and Figueroa. Yeah. Yes. So but but what happened here was is that those the applications in those two cases were granted on negative notice. There was no being no objection. They were granted on negative notice and they were interim in any event where they always are or not. You know, I think that's that's a difficult question. And you may know more about the order itself didn't indicate on it whether it was an interim order or whether it was a final. I guess I'm just asking systemically. Do we well, maybe I shouldn't extrapolate from chapter 11. But certainly in that instance, there's an understanding there interim until you get to the end of the case. Now, it may be that there should be a different rule in chapter seven. And we really if we if we had a different rule of chapter seven would work the way it's supposed to. I don't know. But I guess I was asking myself, given the deference we give to bankruptcy judges, whether there's an objection or not, ultimately to rule on the allowance of fees, does the 60 be issue matter as much would be my question. Well, certainly if this was not a final, if this was not a final fee order, the court would have inherent power to to revisit and reconsider it. OK, but you don't take the position that every every fee app in every case, 7, 13, 11, 12 is interim. You're not telling me that you're not telling us that I'm not telling you that. But I do agree with you that it was a problem in these cases that the that the application for trustee compensation and the trustee final report came, you know, down the road after the application. Yeah, for attorneys fees and the court and wasn't aware that, you know, in some cases a really good example, I guess, is is Figueroa, where if you just looked at the fee application, it looked like it looked like Mr. Smith was requesting. And I don't have the numbers right in front of me, but it was, you know, basically he was requesting something like $1,982 and it looked like, you know, he had recovered $5,571. This is in the reopened case. This is the Wells Fargo refund that was just sort of, you know, came to the estate afterwards. And so that you look at that and that doesn't necessarily look terribly disproportionate. Right. But but you didn't know the court didn't have the information about that. But what came later is the court found out that Mr. Smith was actually also asking for unpaid attorney's fees that he was awarded before the case was before the case was reopened. And he was also asking for, you know, trustee compensation. And that was going to take up the entire amount of this refund that just voluntarily came to decide whether this was nefarious or not. Assume it wasn't. And I don't know. But I mean, the point is, one can't assess this till the end. Is that the fair point? I guess I think from your perspective, I think, yes. Okay. Thank you. Okay. You're not arguing there was an issue in the bankruptcy court about whether the trustees fee could be reduced in light of this. You're not revisiting that argument. Are we? We did not. We did not appeal the you know, we lost on that. We're only here to defend what the court did with the with the attorney's fees. Okay. One more step back. The reason your office didn't object to the fee application the first time around was the office was closed. And was that due to the government shutdown? Yes. Kind of timely, right? In one case, in one case, it was due in the Vanguard case. It was due to that. And then I believe in the in the figure for the row case was the case where there just wasn't a lot of information, you know, some of that information about the trustee final report and all that wasn't available yet. I'm wondering at the same kind of red flags. I'm wondering because, you know, this is going to come up. And I'm just wondering if, if the government shutdown adds up to excusable neglect or whatever the rule 60 standard is. And if so, you know, the consequences of that could be pretty far-reaching. And that's certainly what the what the bankruptcy court found here. Did it find under B-1 and B-6 both or was it just excusable neglect B-1? Do you remember? Well, I'll go back and look. I believe it was B-1. It certainly mentioned excusable neglect. Okay. It might have mentioned the catch-all as well. It might have mentioned the catch-all as well. Okay. I don't remember. Okay. Whether there was excusable neglect or not. Let's take a case where there might be interim applications and a trustee has, is also the attorney for the trustee and is starting a adversary action or doing litigation that you might object to. Is there something we should sort of, in the interims, you should let the trustee, who's now the attorney for the trustee as well, know that there are some lines of litigation that shouldn't be commenced because it should be for the trustee? Because two years down the line, when there's a final application, you say, oh, all that stuff that was in the interim application shouldn't be allowed? Well, certainly, I'm trying to, I'm trying to understand your question in terms of interim and final. Right. I think that the, the, the trustee and the trustee's attorney, right, are always going to be, you know, need to be exercising this billing judgment, right? And I think, I think in this case, and I, I, I did want to mention this point because, because Mr. Smith mentioned it. I didn't understand the judge to be saying just that, that, and I don't think the judge did say that you don't need an attorney for adversary proceedings. Like, that was definitely, that was certainly not what the court said. He was talking about under, you know, very specific circumstances that, where there was no dispute, there was no formal contest. It was just file the document and, and get a settlement, right? And settle it and dismiss it or, but, so what I was going to say, but I also understood the court to be saying that in this case, that it wasn't necessary and reasonable at all to, to initiate litigation, right? And, and that's, that's something different, right? That's separate and apart and in addition to the fact that you, whether or not it's a compensable legal fee, because, you know, because it's an ordinary trustee duty or it's not. In, in this case, you know, did we, do we really need to do that? So we've got arguably a couple different axes here. One is, if you're filing litigation, that kind of sounds like a lawyer thing to do, as opposed to a motion or an application, which trustees do fairly regularly, right? So that's one axis. But the other is, was, was there a different way to get to this result? Yes. Is this a couple of phone calls? Yes. Is this a angry letter to the Times? You know, whatever you want to think of, right? That's the question. And I think that was a, that was a concern. In your view, is that a factual matter? Because Mr. Smith, I think, is telling us it isn't, that he thinks it's a conclusion of law. You think it's a factual matter? Factual matter. Okay. I, I think that's something that the court, you know, that the court is deserving of deference on because, because the court's there, the court understands the circumstances, the court, you know, so, so. Again, I don't mean to make a speech here, but the difficulty with this is, there's just extraordinary deference given to the court in these circumstances. One, it's a factual matter, so you're looking for something clearly erroneous. Two, the cases tell us over and over again, the court does have an independent duty to review fee applications. And three, the court is uniquely, you know, entitled and able to render decisions on this because the court observed the services and has a sense of, you know, the difficulty of the services on the one end, how good the job was, how necessary they were, and in the overall gestalt of the case, what was necessary. Yes. Now, in a midsize to larger case, that all plays out beautifully. It just fails in a smaller case, and I think that's part of what happened here in that you just don't pay the same attention naturally because the trustee's off doing one or two things, and he's not in front of the court every day. So the court, although the court will ultimately exercise the discretion the way the cases say he or she should, they don't really have the same background, which kind of troubles me because we get to the end of the case and suddenly Mr. Smith finds out that, well, this stuff really wasn't compensable. So, I mean, I guess I'm curious if you have a fix for us. What should we do so we don't end up in this situation? You guys are the watchdogs, so do you have any thoughts about what we do? You know, I'm sorry, that's sort of beyond the scope of that. But you probably, it looks like you thought, you sure thought about it, right? Okay. I can take that back and talk to folks about it. Okay. But I'm sorry, that's just. All right. Well, we'll suspend the philosophy class for today. Okay. Well, I have a question though. Yeah. So let's say Mr. Smith, you know, hires himself to do a particular piece of work that we later determine should have been done by him as a trustee and not as attorney. What if he'd actually hired another attorney? And the mistake here was maybe he shouldn't have hired an attorney and then the attorney does the work. In that case, Mr. Smith isn't going to be, have his compensation as a trustee on a statutory basis reduced. What about that attorney that wasn't in part of the situation where he should have been, maybe he shouldn't have been hired or she shouldn't have been hired, but they were? So I want to make it clear from the outset that we don't, from our perspective, this is not about trust, you know, when a trustee hires himself as his own counsel. This issue of, you know, attorneys performing ordinary trustee duties, that applies across the board. It doesn't matter. Well, and the other issue applies. I mean, courts look at that differently. There are some courts that just are very reluctant to appoint the same person as trustee on his or her own counsel. Right. But there's no, I mean, there's no national sense of that, right? That seems very local to us, I think. Okay. Well, and we're just, the statute permits it, so we're not, yeah. My question is what if there was an attorney hired and the attorney provided services and the mistake here was that it should have been done by the trustee. Does the attorney, do the attorney's fees get denied or do you say the trustee shouldn't have done it and we're going to try to reduce the fee? No. Well, I, obviously that's not exactly the case here, but I think there, you know, hopefully in the ideal situation, somebody is looking at the, you know, at the employment applications and perhaps objecting there if it doesn't look like this is something that, you know, a lawyer should be doing, right? And my second response would be that the attorney always has to exercise billing judgment. That's what the case law says. So if the attorney is, you know, it may not be a double dipping situation per se, which is I think what you're getting at because the trustee's not getting paid on both ends, but you still have a problem that the attorney can't be compensated for performing trustee duties. So I think there, what the case law says is that the attorney is just sort of, you know, out of luck for not, you know, thinking before filing certain, you know, things that didn't, for taking actions that shouldn't have required an attorney. So it's the attorney's duty to say to the trustee, no, this is something you have to do, I can't do. I think that's right. I mean, they both have a duty, right? The trustee has a duty to maximize the recovery for the benefit of the estate and the attorney also has a duty to exercise billing judgment. But the problem is that, at least arguably, the trustee, trustee's duty can't be enforced by reducing the statutory commission, arguably. Yeah, and that, yeah, that, I mean, obviously, Judge Ganheard thought that was not the right remedy. But, you know, if the trustee, I suppose in, you know, extraordinary circumstances, something could happen, but that's not the case here and that's not what we're, yeah. Probably sue the trustee for damages for breach of fiduciary duty or something like that, but that's extreme. And I just wanted to point out, just, you know, just in case, I know we put it in our brief, so just in case, is that the, you know, the bankruptcy court also had the Ninth Circuit law says that a court can also grant relief from a judgment sua sponte. So the court had, you know, the court pointed out it had an independent duty to review the fee application and I think it's not clear because the fee application was granted on negative notice how much that was, review was given. And so the court, you know, the court, when the United States trustee objected to the attorney's fees were not authorized by bankruptcy code, the court became aware of, you know, possible mistake or inadvertent or problem with the attorney fee application and the court had the, you know, ability to, whether it was an interim judgment or under Rules 50, sorry, 60B to revisit that, to grant relief from that. If the court has no further questions, I'll ask you to affirm and rest on my brief. Thank you. All right. Thank you very much. Okay. Mr. Smith, you've got two minutes and change. Please go ahead. I don't think it'll take two minutes. I think the court understands this, but I would also just reiterate in closing to say that the whole deal, especially or the main point of contention in the Earl's Food Mart adversary proceedings was the judge taking the position that somehow is the Chapter 7 trustee's duty to prosecute adversary proceedings. And he directed me to spend time and I spent a tremendous amount of time rounding up 50 adversary proceeding cases filed in the District of Arizona same year, same exact year where the trustee, the adversary proceeding was prosecuted not by the trustee, but by the trustee's attorney. That declaration is, I refer to it in my brief and it's docket number 81. The other thing, and you'll see it also in the docket, on one of these cases, he said that he was going to deny any compensation for the prosecution of an adversary proceeding. And I believe that was a Figueroa case because the docket, get this, the docket did not reflect that I had made pre-litigation demands. And in response to that, I was trying to respond to that. I did respond to it and filed proof with the court, evidence with the court that I'd made three, not one, not two, but three pre-litigation demands. So any event, the court understands what the issue is here and I submitted, I asked you to reverse the judge, reverse the judge again in order that the attorney's fees or most of them be allowed. Or if you think the attorney's fees are too much for the size of the case, do the amount. The court has the power to do that. Just set the amount and I don't have to argue with Judge Gannon anymore about this. Okay. All right. Thank you very much. Thanks to both of you. The matter is submitted. Thank you. Thank you.
judges: FARIS, LAFFERTY, and CORBIT